In the Matter of ABRAHAM ACKERMAN, Petitioner, *v.* MAX J. RUBIN et al., Constituting the Board of Education of the City of New York, et al., Respondents.

Supreme Court, Special Term, Bronx County, August 16, 1962.

*Samuel B. Hurwitz* and *Irving A. Silverman* for petitioner. *Leo A. Larkin, Corporation Counsel,* for respondents.

BERNARD NEWMAN, J. Petitioner seeks an order of the court (Civ. Prac. Act, art. 78) compelling respondents to admit his son, who has completed his sixth grade and is now eligible to enter the Junior High School Division, to a two-year special progress class in September of 1962, to be conducted at his Junior High School in The Bronx.

Respondents readily concede that the pupil is academically well qualified, but have denied him admission to the special class on the grounds (a) that he is not of the required age (11.3 years), and (b) that he had been previously " accelerated " in school.

These grounds for refusal are in accordance with respondents' established criteria for admission to the special progress class. The latter objection was waived in several similar situations, and hence the respondents' refusal must be predicated on the former ground, viz., that the pupil is younger than the requisite age. Petitioner contends that this criterion applicable to his son (10.7 years of age) is arbitrary, capricious and without legal foundation.

It appears that the Board of Education initiated special progress classes more than 40 years ago. Indeed, it has been the experience of the board and of educators throughout the country that special progress classes and enriched program classes are of great benefit to gifted students, enabling them the better to develop their potential. From time to time the board has revised the requirements for entrance to such special classes.

The last revision was promulgated by a Board of Education directive in July of 1962 — after decades of study and trial by experienced educators — and the board now offers three different courses comprising the Junior High School curriculum: (a) regular three-year classes; (b) three-year special progress classes, embodying a specially enriched curriculum; (c) two-year special progress classes, accelerated to cover the regular three-year course in two years. The directive limits eligibility to the b and c courses to pupils with superior scholarship grades. Petitioner's son has been admitted to b, but has been denied admission to c, primarily because of the fact that he will be 10.7 years of age in September — the date of admission — as against the 11.3 years-age requirement. The board freely acknowledges that the pupil meets all the other detailed requirements; but insists that the norms adopted are not arbitrary, and that the additional year required for younger students will serve to develop them emotionally, socially, and physiologically at the adolescent stage so as to eliminate stress and aid the child's development.

Petitioner, in effect, desires to substitute the judgment of a justly proud parent for that of experienced educators, who seek to apply their observations and experience for the benefit of his son. Contrary to petitioner's contentions, the standards adopted by respondents are based, not on whim or caprice, but on years of study and trial; they are derived from the experience of day-to-day dealings with children and their problems.

In the instant proceeding, it appears to be the considered opinion of those educators who are in close contact with petitioner's son that, although he is a gifted child, nevertheless for reasons specifically outlined in the board's answering papers, further acceleration might be detrimental to this student's best

interests. Indeed, the pupil's teacher for the last two years graciously avers that the pupil "has a great potential and will develop into an exceptional student, if his development is allowed to take a natural course".

Certainly, the court may not hold as arbitrary or capricious the respondents' determination that chronologically determined physical, social and emotional maturity are vital and proper factors to be considered in the development and education of a child. To thrust a youngster into an environment where all his classmates are older may well result in the consequent impairment of the necessary social integration of the child with his classmates. The court proceeds from the hypothesis that these respondents are dedicated to the proper educational development of the whole child; and nothing has been shown to cast the slightest doubt upon the validity of this assumption. It may be that respondents, in the exercise of their continuing concern for the proper development of all their charges, including petitioner's son, will find it possible to afford him all or some of the additional benefits of the accelerated special progress classes. It may be that continuing examination of the emotional, physiological and social maturity of petitioner's son will afford respondents, in the future, a basis for review of their determination challenged herein. Our educational system continually changes and re-examination of procedures and policies is a constant process. In the course of this process, perhaps the respondents will afford intellectually gifted, but chronologically younger children, such as petitioner's son, opportunities for advancement and enrichment supplementing those afforded in the three-year special progress program described above. However, the court will not attempt to invade that area; nor may the court seek to substitute its judgment in that area for respondents' expertise.

Consequently, the court finds the board's directive (to which petitioner objects) to be proper and in accord with the applicable law (see Education Law, § 2554, subd. 9 detailing the "Powers and duties of board of education"). And the court sincerely believes that petitioner, upon objective reflection, will agree that respondents, in adopting these regulations, have acted in the best interests of his son and all other school children. Furthermore, it is axiomatic that a reasonable administrative determination will not be disturbed by the court (*Doolittle* v. *Supervisors of Broome County,* 18 N. Y. 155; *Matter of Ormsby* v. *Bell,* 218 N. Y. 212; *People ex rel. Peixotta* v. *Board of Educ.,* 212 N. Y. 463). Plainly, then, the directive comes within the familiar rule that the courts will apply the presumption of reasonableness to

the acts of public officials taken for the general welfare (*Newcomb* v. *Board of Aldermen,* 271 Mass. 565; *Matter of City of New York* [*Ely Ave.*], 217 N. Y. 45.)

Accordingly, the application is denied and the petition is dismissed.